OPINION
{¶ 1} Defendant-appellant Larry E. Dunson appeals from his conviction and sentence upon one count of Felonious Assault, following a negotiated plea of guilty. Dunson contends that the trial court abused its discretion when it disallowed his request, on the day of trial, to seek new counsel and continue the trial, and that his plea of guilty was not knowing and voluntary.
 {¶ 2} Based upon our review of the record, we conclude that there is evidence in the record to support the trial court's conclusion that Dunson's plea was knowing and voluntary. Dunson's guilty plea waived any error in the prior ruling of the trial court disallowing his last-minute request to substitute counsel and continue the trial, but, based upon our review of the record, we find no abuse of discretion by the trial court in any event. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Dunson was charged by indictment with two counts of Felonious Assault, one of which included a repeat violent offender specification. Both counts involved the same victim and the same act. At the plea hearing, the State conceded that Dunson could only be convicted of one of the counts.
 {¶ 4} On the day of trial, just before the trial was to start, Dunson's trial counsel informed the trial judge that there was a problem that needed to be addressed. The judge met in chambers, on the record, with Dunson, his attorney, and the prosecutor. Dunson expressed his concern that two witnesses who had been located to testify in his behalf had evidently changed their stories, and were now going to be called by the State. The trial court, after hearing Dunson out, took this to be a request for a continuance, and overruled it.
 {¶ 5} Dunson's attorney then informed the trial court that he believed that Dunson no longer wanted to be represented by him. Dunson confirmed this, and the trial court gave Dunson an opportunity to make a record on why he desired new counsel. There had evidently been one prior substitution of counsel at Dunson's request. Dunson expressed his view that the change in the witnesses' stories was the fault of his attorney. The trial court rejected this view. Dunson then said that he now wanted, with the aid of his family, to retain counsel. The trial court informed Dunson that he had had the right to retain counsel of his own choosing at any time, but that the venire was now ready for jury selection, and the trial was not going to be continued at this late date.
 {¶ 6} Dunson's attorney then asked the court for some time to talk to Dunson, in view of these new developments. The trial court agreed to give Dunson and his attorney about 20 minutes to talk things over, then pick the jury and have a view of the scene, with the opening statements and testimony not to start until the following morning. It was then 1:40 p.m.
 {¶ 7} Just after 2:00, a discussion was had, on the record, involving counsel and the trial court, but not Dunson, concerning a possible plea bargain, whereby Dunson would plead guilty to one count of Felonious Assault, with the Repeat Violent Offender specification being removed. The State would agree to remain silent as to the appropriate sentence, but the victim would address the court. This was evidently acceptable to Dunson, and a plea hearing followed about a half an hour later, in which Dunson tendered, and the trial court accepted, Dunson's plea of guilty to one count of Felonious Assault, without the Repeat Violent Offender specification.
 {¶ 8} About a month later, after a pre-sentence investigation, the trial court imposed a sentence of four years' imprisonment. From his conviction and sentence, Dunson appeals.
 II {¶ 9} Dunson's First Assignment of Error is as follows:
 {¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S REQUEST FOR A CONTINUANCE TO OBTAIN NEW COUNSEL AND WHEN THE TRIAL COURT DENIED APPELLANT COUNSEL'S MOTION TO WITHDRAW AS COUNSEL OF RECORD."
 {¶ 11} Although Dunson's trial counsel, Daniel Brinkman, was assigned, it appears from the record that Dunson specifically requested him.
 {¶ 12} After hearing Dunson out on his concern that two witnesses whom he had planned to call were now going to be testifying for the State, the trial court explained the role of witnesses to Dunson, following which there was a discussion of Dunson's confidence in his trial counsel:
 {¶ 13} "THE COURT: Witnesses are subpoenaed to come in and tell the truth. Okay? They're not necessarily one side or the other's witness. They're available to be called by either side.
 {¶ 14} "And why he's changed a story, his story, in your mind, that just doesn't impact the trial. If that's an implied motion to continue the trial, I'm not continuing the trial. Okay?
 {¶ 15} "The defense is under a duty to notify the State on a witness list of who they plan to call as witnesses. The State has a chance to contact and interview that person to the extent that they want to talk to the State.
 {¶ 16} "I don't know what's happened to change his story that you perceive he's changed. But he's a witness that either side can call. And it sounds like for a tactical reason Mr. Brinkman doesn't think that he's going to help your case. Okay? And maybe he has a tactical reason he would rather cross-examine him than call him as his only witness for your defense. Those are tactical decisions you and Mr. Brinkman need to discuss in your own privacy without the State being involved and without listening in. Those are your own trial-strategy kinds of decisions.
 {¶ 17} "You're not claiming that Mr. Brinkman is incapable of representing you fairly, are you, and to a degree of competence and effectiveness, are you?
 {¶ 18} "THE DEFENDANT: Reasons — yeah.
 {¶ 19} "THE COURT: Are you claiming that? Somehow this is Mr. Brinkman's fault?
 {¶ 20} "THE DEFENDANT: No, I'm not saying it's Mr. Brinkman's fault.
 {¶ 21} "MR. BRINKMAN: If I can speak — because we've talked outside. I think he does feel that I have not represented him well because of the scenario that's taken place between the two other witnesses, Jeff Hunter and Charles Wilcoxin. Because it appears to him, because of the things that have happened — he initially thinks both of those witnesses are going to be on our side. And then, after I interview them, talk to them, and it ends up they end up being State's witnesses. So in fact I think he does have mistrust for me because of the way everything's played out.
 {¶ 22} "Am I saying what you're feeling?
 {¶ 23} "THE DEFENDANT: Yes, sir. Yes, sir.
 {¶ 24} "THE COURT: Okay. Is that a motion to withdraw? Or — I don't understand where we are because I haven't heard anything that sounds like it's Mr. Brinkman's fault that these two witnesses apparently have changed their story or whatever you think has happened. How is that to Mr. Brinkman's fault?
 {¶ 25} "THE DEFENDANT: I'm not saying Mr. Brinkman is at fault for — statements to change. My thing is I feel that Mr. Brinkman didn't take somewhat of control of his witness, you know, that he went out and talked to. That's the only thing that I've heard that he didn't grab ahold of them and, you know —
 {¶ 26} "THE COURT: He can't stop the State from talking with them also if that person chooses to speak with the State's representatives. Do you understand that?
 {¶ 27} "THE DEFENDANT: Well, I understand what you're saying.
 {¶ 28} "THE COURT: That's why there's a witness list and the State has a chance to try to interview them prior to trial.
 {¶ 29} "THE DEFENDANT: My understanding was that Charles didn't want to talk to the prosecutors.
 {¶ 30} "THE COURT: Well, then, he needs to tell them `I'm not talking to you.' They can't force him to talk to them. But if he chooses voluntarily to talk to them — I don't know what's happened about his changing his story that you claim has happened.
 {¶ 31} "THE DEFENDANT: This is what Mr. Brinkman has told me.
 {¶ 32} "MR. BRINKMAN: I don't think it's disputed that — I spoke with him.
 {¶ 33} "THE COURT: That is just the problem with the witness. It has nothing to do that Mr. Brinkman has dropped the ball. I mean, that probably happens in a number of cases. The witnesses don't quite come up the way you hoped they would or the way you thought they would or — I don't know if they can be impeached. These are decisions you have to make with your attorney about how to proceed.
 {¶ 34} "But, you know, I have a feeling that doesn't happen this often. I have a feeling that stuff happens for some reason other than — they get a little scared and maybe they're changing their idea about what happened. But that — are you asking me to continue the trial and appoint a new attorney? Is that what this is coming down to?
 {¶ 35} "THE DEFENDANT: My family is willing to raise money to pay for a lawyer.
 {¶ 36} "THE COURT: They had that right to do all along, Mr. Dunson, at any stage of the proceedings.
 {¶ 37} "THE DEFENDANT: I understand that.
 {¶ 38} "THE COURT: Okay. Is that what you're asking?
 {¶ 39} "THE DEFENDANT: Yes.
 {¶ 40} "THE COURT: To get a new attorney and to continue the trial?
 {¶ 41} "THE DEFENDANT: Yes.
 {¶ 42} "THE COURT: Overruled on both of those counts. Okay? On both of those counts.
 {¶ 43} "You've made an extensive record here. There's no basis to think that Mr. Brinkman cannot represent you or that he's done something ineffective with regard to a witness that appears to have changed his idea of what happened. And you had a right to hire your own attorney lo these many months at any stage.
 {¶ 44} "THE DEFENDANT: I didn't have the money. I just — during the whole situation, my family would hear what was going on. They talked about `You need to pay for a lawyer.' `Cause I had told them I had a court-appointed lawyer at the time.
 {¶ 45} "THE COURT: Just something the Court's not going to permit at this late date with the jury already waiting. And —
 {¶ 46} "THE DEFENDANT: Right.
 {¶ 47} "THE COURT: — and you haven't presented any reason why Mr. Brinkman's been ineffective. He's a good lawyer.
 {¶ 48} "THE DEFENDANT: I know that.
 {¶ 49} "THE COURT: He's worked with you.
 {¶ 50} "THE DEFENDANT: I asked Mr. Brinkman, you know, when the public defender said they couldn't take my case because there was — I forgot what they said.
 {¶ 51} "THE COURT: A conflict.
 {¶ 52} "THE DEFENDANT: Conflict of interest, yeah. So I asked for Mr. Brinkman.
 {¶ 53} "THE COURT: Well, any other record that needs to be made, Mr. Brinkman?
 {¶ 54} "MR. BRINKMAN: No. * * *."
 {¶ 55} Although any error in the trial court's decision not to substitute counsel and continue the trial was waived when Dunson subsequently pled guilty, we see no abuse of discretion. The trial court gave Dunson a full opportunity to make a record on this issue. We agree with the trial court that Dunson's unhappiness that two witnesses he thought were going to testify for him were being called by the State to testify against him has not been shown to have been related to any ineffectiveness of his trial counsel.
 {¶ 56} Dunson's First Assignment of Error is overruled.
 III {¶ 57} Dunson's Second Assignment of Error is as follows:
 {¶ 58} "THE APPELLANT'S PLEA WAS NOT VOLUNTARY AND THE TRIAL COURT ERRED IN ACCEPTING HIS PLEA."
 {¶ 59} The trial court conducted a thorough plea colloquy, satisfying all of the requirements of Crim. R. 11(C). The court established that Dunson was not under the influence of alcohol, drugs or medication that would impair his ability to understand what was being said or to think clearly, and that Dunson, who was 32, although not a high school graduate, had a GED. After establishing that Dunson understood the nature of the charge to which he was pleading guilty, and that no promises had been made to him other than the essence of the plea bargain that had been recited in the record, the trial court asked him: "Are you pleading guilty to count two here today voluntarily and of your own free will?" Dunson responded affirmatively.
 {¶ 60} At the conclusion of the plea hearing, the following colloquy occurred:
 {¶ 61} "THE COURT: Did you have any questions about anything that I've gone over with you about your potential penalties, your rights?
 {¶ 62} "THE DEFENDANT: No, sir.
 {¶ 63} "THE COURT: Or anything that I've gone over with you here orally today?
 {¶ 64} "THE DEFENDANT: No, sir. I would like to say if I can that — me wanting to speak to — there was no — I didn't want you to think that was no disrespect or I didn't want to get you mad or anything like that.
 {¶ 65} "THE COURT: None taken.
 {¶ 66} "THE DEFENDANT: I was confused how things was going, do I need to speak to someone —
 {¶ 67} "THE COURT: Certainly.
 {¶ 68} "THE DEFENDANT: — up high, I guess.
 {¶ 69} "THE COURT: I understand that.
 {¶ 70} "THE DEFENDANT: Okay.
 {¶ 71} "THE COURT: But no questions about anything that we've gone over. Is that correct?
 {¶ 72} "THE DEFENDANT: I got no questions.
 {¶ 73} "THE COURT: Any questions about anything on the plea form itself?
 {¶ 74} "THE DEFENDANT: No questions.
 {¶ 75} "THE COURT: Okay. Mr. Dunson, what is your plea to count two, felonious assault?
 {¶ 76} "THE DEFENDANT: At this point in time, guilty, sir.
 {¶ 77} "THE COURT: You're pleading guilty?
 {¶ 78} "THE DEFENDANT: Yes, sir."
 {¶ 79} Whereupon, the trial court found that Dunson had knowingly and voluntarily tendered his plea, and accepted it.
 {¶ 80} Dunson predicates his argument that his plea was not knowing and voluntary upon his argument that the trial court improperly denied his last-minute request to substitute counsel and continue the trial, which we have rejected in Part II, above, and upon the ground that he indicated, in the colloquy quoted above, that he was "confused." We agree with the State that Dunson's statements to the trial court, quoted above, constituted an attempt to mollify the trial court, upon whose mercy he was then throwing himself as a result of his plea, in the event that the trial court had been offended by Dunson's last-minute request to substitute counsel and continue the trial. We understand his reference to having been confused to refer to the time, an hour earlier, when he made that request, not to the present moment, when his plea was being tendered and accepted.
 {¶ 81} The record supports the trial court's finding that Dunson tendered his plea knowingly and voluntarily. Dunson's Second Assignment of Error is overruled.
 IV {¶ 82} Both of Dunson's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 . . . . . . . . . . .
Wolff and Donovan, JJ., concur.